Council. Good morning, your honors. My name is Michael Johnson. I'm here representing the appellant National Union. This is an insurance coverage dispute that involves an excess insurance policy that was issued by my client, National Union. It's a five million dollar excess policy over a ten million dollar primary policy that had been issued by executive risk. And before I forget, I would like to save approximately five minutes for rebuttal. You're representing National Union? Correct. So, and our policy was in effect from December 15th, 2004 until March of 2006. The dispute concerns whether there is coverage under the National Union excess policy. And there are two pivotal coverage issues that I'd like to focus on today. The first of the issues is whether a prior notice exclusion applies to bar coverage under the National Union policy. The second issue is whether the executive risk policy that was in effect in the 0406 policy period was exhausted. And the reason that's important is because exhaustion of the primary policy is a necessary. The other side says, hey, exhaustion is the equivalent of a joke. Everybody knows that it was exhausted. And what's your answer to that? Well, the record doesn't. All I know is that it's exhausted, they say. What is this? And you say, no, it isn't. I mean, where do we look to get a definitive answer on this, what I think is sort of a funny fight? Well, it's an interesting question and it has real implications. It's not merely. Where's the answer? It either was or it wasn't. Where's the answer? The answer is in the NACE declaration and in the admissions that were made by executive risk that it treated this claim based on the underlying lawsuits as having been made within the 2003-2004 policy period. There's abundant evidence in the record that they defended the case under the 2003. So this is a technical it wasn't exhausted argument that you're making? It's not technical at all, Your Honor. Exhaustion has real life implications for the excess carriers, for lost history of the insurance, for reinsurers. What do you mean by exhausted, then? Exhausted means that the money is paid under that particular policy. Okay. Under that particular policy. Would you agree the money was paid? The money was paid. Okay. That's the money was paid. Under the 2003-2004 policy. And that's not disputable. Exhausted. But you say it depends on which policy. That's what I mean by a technical argument. I don't believe that's technical, Your Honor. I do. Which policy? Go ahead. Okay. The technicality makes a $5 million difference in this case. Right.  It does. $5 million technicality. Okay. And here's why it's One of the serious issues is whether or not nationals can be on the hook or not. And it seems to me it depends upon whether or not the 2003 policy was exhausted or the 2004 policy was exhausted. I mean, it's an odd cup of tea here. But is E.R. 2 supposed to make that determination? And national then gets stuck or not stuck with $5 million? Is that what this is all about? That's a very important issue. Yeah. That's what this is all about. And here's what Executive How does the district court make that determination? I mean, I guess Genesis has some sort of a burden here to, you know, establish, you know, whether exhaustion was under the 2003 policy or the 2004 policy, I imagine, right? I think we have to look at the factual circumstance of where we are today. And where we are today is that Executive Risk has placed this loss in the 2003-2004 policy period and treated it as exhausting that policy period. And that's abundantly clear because otherwise we wouldn't have gotten to the question of whether Genesis should have paid its policy. They would have said the 2003-2004 policy wasn't exhausted, and therefore you don't even need to get to us. So where the record stands, where the facts stand today is that the 2003-2004 policy has been exhausted. What Executive Risk represented to the court in its position statement was that we are going to put this in the 2003-2004 policy period. If the court determines that it belongs in the 2004-2006 policy period, then we will move it to the later policy period. But until that happens, it's in 2003-2004. 2004-2006 is not exhausted, okay? That's where we stand today. There has been no judicial determination that this loss belongs in the 2003-2004 I'm sorry, in the 2004-2006 policy period. The court has not looked at that. That question is going to turn on whether the 2003-2004 Executive Risk policy was triggered by notice of circumstance. We know from Mr. Nace's declaration that he had a discussion with a representative from MAGMA, and the representative provided him with additional information beyond just the patent infringement complaint. He said, and this is what we know from the declaration, but there was more to the discussion we don't know because that discovery hasn't been done. But we know from the declaration that Executive Risk representative was told that MAGMA had had a prior patent infringement claim that had turned into a securities class action shareholder derivative type of situation. So, now, we have to compare that with the information that was given to previously held that Genesis did not get proper notice under its excess policy. In other words, MAGMA failed to provide sufficient notice to Genesis. MAGMA provided and I don't know the reason for this. We don't know. But the fact is the record shows that additional information was given to Executive Risk that was not provided to Genesis. So, there's clearly a triable issue as to whether the Executive Risk 2003-2004 policy was triggered by notice of circumstances. That issue has not been decided. And until that issue is decided, the loss remains in the 03-04 policy. Scalia. You know, the exhaustion issue is something that's puzzling to me, and I think that, you know, something that we have to really flush out. But as far as the notice is concerned, I mean, it seems that National is on the hook here. I mean, the Court previously determined that proper notice wasn't given, and I think that National is at risk on that issue. I mean, how do you get around that? Well, you have to look at the language of the policies. Well, the language is very clear. It says notice under the policy. What policy are we talking about? Well, we're obviously, Your Honor, National Union's policy. National Union stepped into this risk. It has a policy, and it's entitled to have a complaint. It's their language under the policy, right? It's their language. Well, it's the following form of Executive Risk. But it is in their language. The language of the prior notice exclusion, which is what National Union is relying on, says, is that coverage is excluded for loss on account of any claim that is based upon, arising from, or in consequence of any fact, circumstance, situation, transaction, or event, or wrongful act that before the inception date of the policy was the subject of any notice. Very broad. Any notice under the policy, it says. Any notice given under any policy or coverage section of a prior policy. What policy are you talking about here? Notice was given under the 2003-2004 Genesis and Executive Risk policies. We know that. This Court in its prior decision recognized that notice was given. Not proper notice. Proper notice was not given. Sufficient notice was not given under the Notice of Circumstance Clause, which has an additional specific requirements. It specifically says, and you have to compare these two clauses. They're different wording. I happen to be on that panel. You were, Your Honor. And so you recall that the Notice of Circumstance Clause did include specific requirements as to what notice was required. You had to identify potential plaintiffs. You had to identify potential defendants, damages. So there were like five or six items that were required to be given. Now, that notice was given to Executive Risk, we believe. And we believe that because Executive Risk looked at it and said, you've given us sufficient notice. We're going to treat this loss, we're going to treat the securities claim and the shareholder derivative claim, we're going to treat these as having been made under the 2003-2004 policy. And we have Mr. Nace's declaration as to why they did that. So, and let me just sort of talk briefly, and then I'll reserve some time. Generally, the way the trial court approached this was that it's an either-or situation. It's either got to be in the 2003-2004 policy period or it needs to be in 2004-2006. That's the wrong approach. Each policy is required to be interpreted based on its own language. And the language here talks about notice under the policy. And what policy are you talking about? You're talking about your client's policy, right? Well, the prior notice exclusion requires notice under any notice under a prior policy. And it's clear that any notice was given. It doesn't seem as if effective notice was given here at all. I mean, I think Nashville is on the hook. I think you have a better argument in terms of your exhaustion issue, I suspect. Well, and to be clear, we're not arguing about notice to Genesis. That's already been determined. We're talking about whether notice was given to executive risk, and it's entirely possible, and based on this record pretty clear, that proper notice was given to executive risk to trigger its 03-04 policy, that the $10 million primary level would be placed under the 03-04 policy. That would result in no exhaustion to the national union policy, and, therefore, the national union policy would not be triggered. What do you think was driving the district court to some equitable sense that somebody's got to be on the hook here for the excess? I think there were two things. One, the district judge would believe that this was an either-or situation, which it isn't necessarily. And two, and he said very clearly, he didn't want to leave the policyholder on the hook. And that's entirely possible because the reason we are here is that the policyholder, MAGMA, did not give proper notice to Genesis. You know, if you look at the policy, it's very clear that it's on the insurance burden to give the proper notice required under the policy. MAGMA gave that proper notice to executive risk, we believe, that hasn't been decided under the 03-04 policy. This Court has determined it did not give proper notice to Genesis under the 03-04 policy. So precisely what are you asking us to do? Send the case back exactly for what? First of all, we would like, Your Honors, to reverse the judgment that the prior notice exclusion does not apply. We believe that exclusion does apply in bars coverage. Based on this record, there was notice given of facts, circumstances, situations, transactions, events, or wrongful acts in the 03-04 policy from which the subsequent claims arose. So we would reverse the judgment and ask for a judgment in our favor based on the prior notice exclusion. If you determine that exclusion does not apply, we would ask that the matter be remanded for a determination of which primary policy period is the primary limits should be placed on it. Now, let me just ask you, if that be the case, if we don't accept your notice argument here, which I have some serious concerns about, then how on remand do you flush out the issue of which policy now comes into play? Well, executive risk has said that if there is a judicial determination with regard to which policy, then it will move. But there is no judicial determination. Right. That would need to be done. There would need to be discovery on that. It would be either a summary judgment. We would need to depose Mr. Nace. We would need to find out what information was provided to him. In the 03-04 policy period, on behalf of executive risk, we would need to review those files and documentation. We do know that the committee is going to call the shots. Whatever executive risk has determined, whether it's going to place this under the 2003 or the 2004 policy, it's their determination that will basically carry the day. Your Honor, they have already placed it in the 03-04. And they will move it if there's a determination to the contrary. So that would need to be done. But there's not going to be a determination in that respect. They already placed it under the 2003 policy, right? They've accepted that. That's really, you know, puts them in the soup, so to speak. So you're telling me on remand there has to be some court that's going to determine whether the 2004 policy or the 2003 policy is in play, notwithstanding the way executive risk has dealt with this? We're perfectly happy to leave it in the 03-04 policy period. That means our policy is not triggered. Yes. I want to reserve the last remaining time I have. Good morning, Your Honors. I'm Dennis Cusack representing MAGMA in this case. I would like to take certainly no more than 10 minutes and reserve 5 minutes or more for Mr. Loss, who will argue for Genesis. I am going to address the prior notice issues and the exhaustion issues. Let me address the so-called exhaustion issue first, since that's where this panel started out. Exhaustion is a misnomer. There is no word in the policy, exhaustion. What the policy actually says is that what triggers the excess coverage, what then does trigger it? Payment. Payment of the amount of the underlying limits by executive risk or MAGMA or national union. But under a claims-made policy, it matters. In which year the payment was made, right? No, it doesn't. Why not? Because all that the policy requires, all that national union's policy requires at the excess level is that the amount of the $10 million underlying its policy is paid for this case. Well, why is it, then, that the payment was assessed to the 03 policy? So executive risk, when it first got this claim, said, well, we think it's a notice of circumstance under the 03-04 policy, so we're going to proceed on that basis. We'll proceed under a reservation of rights. When Genesis raised its concerns about the notice of circumstance, executive risk said, we're going to reserve our rights. If Genesis is right, that's fine. If Genesis is wrong, we will move it, for whatever bookkeeping purposes we need to, to the second year. And they've made that position abundantly clear throughout this case, including in a statement to this Court. They've made that quite clear. And there's no evidence to the contrary that they didn't or wouldn't do otherwise. But what's the import of that? The import of it? This big if. And what does that mean in terms of resolving this case? Well, all this Court, the undisputed facts before this Court are that national union's policy says that the amount of the underlying limits needs to be paid. It's clear. It's been paid. It doesn't matter that for bookkeeping purposes it was paid under one policy year or the other. Well, it matters a lot to the person, to the company that has to pay out the excess coverage. It matters a lot which year it's allocated to. Actually, what matters is what the policy says matters. And what the policy says matters is the amount of the underlying limits. It does not even ---- That can't be right, because then you could allocate it to any year. I mean, that can't be right, because you can allocate it to any year after the fact and put an excess carrier on the hook after the fact. What the purpose of that provision is from national union's point of view is to say I don't have to pay until at least $10 million has already been paid on this claim. That's what matters to national union. Well, if I have the policy language with exclusions and with conditions that have to be met before payment obligation is triggered, if the only thing that matters is that money is paid, then you could do away with all of the policy provisions and just predicate liability on whether or not the amount was actually paid. That can't be right. Well, it does require the amount be paid for this claim, and there's no dispute that the amount was paid for this claim. But we know that it doesn't matter that it was paid out of a particular pot in Executive Risk's accounting system designated 0406, because one of the things the national union policy allows is that that $10 million not even be paid by Executive Risk. It could have been paid by MAGMA out of its own pocket. It could have been paid by somebody else. The policy doesn't require that. The next question, and that is whether national union is on the hook or not. Okay. So then the next question is the prior notice exclusion. Exactly. All right. So there are two reasons why the prior notice exclusion doesn't apply here, and the district court addressed both of them. And the first one is the plain language of the prior notice exclusion says that the is a renewal or replacement. So under, in this circumstance, can only mean in accordance with or subject to the terms of. That's the only reasonable reading of how under is being used in that circumstance, and the district court recognized that. When this court, two and a half years ago, said the notice that MAGMA gave to Genesis did not comply with the terms of Genesis. No, no, no. It was notice of circumstance didn't apply. Right. But notice of circumstance was a term of art under that policy. Notice in its general sense as advising someone of the existence of something is a different point. So I think the panel made a distinction between the notice of circumstance that was given and the notice of the eventuality or the occurrence of an event. So I'm not sure that I'm convinced by that argument. Well, I think Your Honor has actually made my point. What this Court said is notice was given, but it did not comply with the terms of the Genesis policy. Right. Notice of circumstance wasn't given. Right. And my point is that the prior notice exclusion requires for it to apply that that notice must be given under the policy. In other words, in accordance with. I'm not sure I agree with you. You're trying to say that the notice that must be given is notice of circumstances, and it might just be notice generally, not notice of circumstances. You're reading into the notice requirement, the notice of circumstances provision. And I'm not sure that that's persuasive. You're saying it has to be noticed under the policy. Yes. And that requires something that's somewhat ambiguous a little bit. That requires some sort of construction. Maybe it should be construed against the insurer in this situation. Well, that's exactly right. So if you have any doubt about whether under the policy means anything other than in accordance with the terms of, then you revert to all the other rules of insurance policy interpretation, which say you read this in the context of the policy as a whole. Okay? You read it with the purpose in mind. In other cases, the Friedman case of acknowledge, the purpose of these provisions, this provision, the notice of circumstance provision, the prior notice exclusion, the related claims provisions are to allocate losses between policies, not to create a chance for the insurer to guess wrong about notice and forfeit its coverage. That's not what they're there for. So this is going to be remanded on the so-called exhaustion issue. How does that get resolved by the district court? What does the district court do then? Well, I don't think there's any need to remand this for the exhaustion issue for the reasons I've just described. Secondly — What was that reason again? Well, because the policy simply doesn't require that the money be paid out of a box in the open court. Executive risk makes the call, and by reason of its call, automatically you can decide whether or not National is on the hook or not. I don't get that. Executive risk doesn't have to make the call at all. The money has been paid. It's undisputed that the money has been paid. That's point number one. Point number two is that executive risk has said, if this Court determines that the notice of circumstance given to Genesis was not proper, we're going to move it to our second policy year. They've said that. There's no evidence to the contrary. And third is that — Well, what right do they have to make that determination? They don't. That's my point. They don't. The facts are undisputed. The money has been paid. They have said we're moving it. And let me get to the third point. But what seems to be disputed is whether the money was paid under the 2003 or the 2004 policy. But actually, the record — I think the record is undisputed that executive risk said, while we provisionally paid it under the 2003-2004 policy, once this Court determined as it did that the notice of circumstance was not proper under the 2003-2004 policy, we will move it to the 2004-2006 policy. Is there any evidence in the record that that was actually done as an accounting measure? Was there an actual movement of the payment from — I don't think that's in the record, Your Honor. We have executive risk's promise and nothing else. Okay? So third is there's simply no evidence in the record that the notice given to executive risk was any different than the notice given to Genesis. Isn't it a missing link somehow that they may not have moved it as a bookkeeping matter? No. As I said, it's not a missing link. It doesn't make any difference, because you say Genesis resolves it. Genesis resolves it, and the payment of the money, the payment of the $10 million resolves it. Thank you, Your Honor. This is a weird case. All right. Thank you. Thank you, Your Honor. There's going to be a quiz for everybody in the audience after this case is over, all right? Including the law clerks, so don't laugh. Don't you all feel sorry for us now? Good morning. I'm Lew Loss, counsel for Genesis Insurance Company. Is your name Lewis Loss? It is. I had a professor named Lewis Loss. Are you any relative? Yes. He was my great uncle. Okay. And a great man. Thank you very much. Let me address a few points. I won't rehash all of the issues here, but obviously the exhaustion issue is an important one. Here we have in the record many statements by executive risk that it would adhere to the Court's ruling with respect to the adequacy of the notice that was being adjudicated in the earlier proceedings in this case. This Court found, properly in my client's view, of course, that the notice was inadequate. It's clear from the many statements in the record that executive risk did not view itself as differently situated from Genesis with respect to the notice issue. It is reasonable, therefore, to conclude that this Court, having made a clear ruling on the adequacy of the notice to Genesis, that executive risk did what it said it was going to do. If it's national union's view, as it now evidently is, is that this is an issue that can only be resolved through discovery, that is a new position. They did not protest to the motion for summary judgment below with a Rule 56 declaration stating they needed to conduct discovery. Well, but their position all along was that they reserved all rights to advance exclusions or conditions to payment. Yes. But with respect to exhaustion, if in the district court they felt summary judgment should not be awarded because they needed an opportunity to conduct discovery to show that our motion was without merit, they did not move to do that. Well, they wouldn't necessarily have to conduct discovery if it were the obligation of the insurer to show when the policy of the other insurer to show when the payment was made. They wouldn't have to do discovery on that because there would be a void in the record that they could use to their advantage. Well, the gist of the motion was that the undisputed material facts and statements in the record allowed the inference that the payment had been made, and national union did not come back and say if we can take discovery, we can show in fact that did not happen. Well, there wasn't a dispute about whether the payment was made. The dispute was which policy year the payment was allocated. Well, there's no question that the payment was initially made under the 0304 policy, but Executive Risk said it would adhere to this Court's ruling with respect to the adequacy of the notice, which was the notice provided to Genesee. And it was not in the record as to whether that actually was effectuated. Correct. And what I'm suggesting is that if national union's view is that it could show that that payment had not been made despite the representations to the Court that Executive Risk had made, they should have let the district court know that that was their view, that they needed to take discovery. In what form did they say that? I'm sorry. In what form did they say that to the Court? We'll move it if. There was, as cited in the briefs, they said it orally in the Ninth Circuit argument. They settled out of the case, I believe it was after the Ninth Circuit's ruling and before the district court's second ruling, and in their submission, which is in the record, they expressly stated that they would adhere to the Court's ruling. I'm sorry. It was before the Ninth Circuit had ruled. They ruled, they stated that they would adhere to the Court's ruling with respect to the adequacy of the notice. That's a statement in court. They're going to be bound by that. Yes. Now, to be clear, the statement literally said notice under the they would adhere to the Court's ruling with respect to notice under the 04, under the Executive Risk policy, and the Ninth Circuit's ruling literally read, addresses only the genesis policy, but the notices, written notices were the same. It was clear throughout the course of the case, and I'm sure Magner would not have allowed Executive Risk out of the case if it had not been the case, that the understanding was Executive Risk was going to be bound by the ruling in the Ninth Circuit. That's a lot of inferences. Well, under the case of Johansson, the California Supreme Court case of Johansson, insurers who find themselves in the position that genesis found itself in, in 2008, within a demand to contribute to a settlement, but that insurer believes there is no coverage, Johansson encourages insurers to make that payment, subject to a reservation of rights, and then go about proceeding to establish the absence of coverage, which we've done in this Court's 2010 ruling, and its right to collect the payment back, either from the insured or another responsible party, which is the ruling the District Court gave us in December of 2010. We have seen that that can be a very, very long road for an insurer who has tried to do the right thing, and I would respectfully urge the Court to affirm the District Court. It had adequate basis, I think, to conclude that it could find the National, the Executive Risk 0406 policy to have been exhausted, and we should not be sent back down for yet another round. Thank you very much. All right. Thank you, counsel. Rebuttal. Addressing the comment about this being a weird case, this case is weird because MAGMA didn't give full notice to genesis. That's really the heart of the problem and why we find ourselves where we are today. I do want to address the exhaustion and the comment that it doesn't matter which policy the money is paid out of, and there was reference to the language of the National Union policy. I refer the Court to Clerk's Record 168, page 69, where it defines what exhaustion is. And it says that the total underlying limits, which is a defined term, have to be paid. If you look at the definition of total underlying limits, it means the amount set forth in the declarations, which is the aggregate sum of the limit of liability of all underlying policies. Underlying policies is also a defined term, which means any policy set forth in item 5 of the declarations. If you flip back a couple pages to the declarations, you'll see that the declarations reference the 0406 policy. So what that means is that the exhaustion provision in the policy specifically does reference the 0406 executive risk policy. So it's not, you know, any policy. It's the 0406 policy where the underlying limits have to be paid from. What would be the, would it make any difference if it were definitively showed that executive risk had moved it to the 0406 policy? Executive risk has said that they will not move it to the 0406 policy until there's a judicial determination that its decision to put it in the 0304 policy is wrong. And Your Honor asked for the site to the record where executive risk made that statement. They submitted a statement of position for the district court's benefit in connection with the underlying motions. That's at clerk's record 100 and page 6. And that's executive risk's statement of position regarding the summary judgments where it said it's in the 0304 policy, we'll move it if. Okay? So what do you say? That the declaration puts it into the 2004, 2006 category? No. The declaration by executive risk's claims person says that based on my discussions with MAGMA's representative, we put it under 0304. Put it under 0304. Because we had notice of circumstances sufficient to trigger the 0304 policy. But once the Court said that the notice of circumstances was not sufficient, and then wouldn't it, wouldn't the promise to move it make it so that it was in the 0406 category at that point? The difficulty, Your Honor, is that this Court properly limited its holding in the prior case to notice given under the — given to genesis. It did not address, and it's never been before the Court, either in district court or here, whether the notice that was given to executive risk was sufficient to trigger the notice of circumstance provision. This Court only considered the notice that was given to genesis, and the record is clear that more notice and more information was given to executive risk than was given to genesis. That is what Mr. Nace's declaration shows. And what will — would be the implication of executive risk showing up on remand saying we've moved it based on the Court's decision? It's there. It's in 0406. Well, I think that that would be contrary to the position that they've taken in court already. But what would be the effect if they showed up and said we did that? We would probably say that that's not binding on us, that you previously told us that there needs to be a judicial determination, and that it would be a breach of — and I don't have a good answer for that. But certainly primary insurance carriers do owe to excess carriers. This wasn't addressed in the briefs, but we know this. Primary carriers owe to excess carriers a duty of good faith and fair dealing in how they handle claims. Okay. So then you can sue them for breach of the covenant of good faith and fair dealing. Yeah. Well, I don't know that it would be — I know.  Thank you. I appreciate your consideration. All right. Thank you, Counsel. The case is argued and submitted on the brief. We'll be in recess for 10 minutes. All rise. Thank you.
judges: Block, Trott, Rawlinson